Michael **AHLSCHLAGER**, Appellant,

v.

**REMINGTON ARMS COMPANY,
INC.**, Appellee.

No. B14–87–632–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 31, 1988.
Rehearing Denied May 5, 1988.

Les Cochran, Steven D. Naumann, Houston, for appellant.

Paul E. Stallings, Clifford A. Lawrence, Jr., B. Lee Ware, Don Jackson, Eileen F. O'Neill, Frank W. Mitchell, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant sued Remington Arms Co., Inc. for personal injuries suffered during a hunting trip. He alleged that the Remington Model 700 rifle in question was defectively designed and manufactured, that Remington failed to give adequate warnings, and that Remington was grossly negligent. The jury found against him on all of his theories of liability, and the court rendered a take nothing judgment. He makes three arguments on appeal:

(1) two instructions in the charge were improper;

(2) he should have been allowed to adduce evidence relating to the *Model 600;* and

(3) he should have been allowed to read part of a deposition from a federal suit in rebuttal to Remington's case in chief.

We affirm the judgment of the trial court.

Appellant was shot in the leg while on a hunting trip. One of his companions, Daryl Dornak, was handling a Model 700 rifle when it unexpectedly fired. The parties presented conflicting evidence regarding the exact circumstances of the accident. Appellant's argument at trial was that Dornak had three rounds in the rifle, and that the gun fired before any shells were unloaded. Remington's argument was that the rifle had four rounds in it, whereas Dornak thought that only three were in the gun. Remington hypothesized that Dornak inadvertently fired the gun, believing it to be unloaded.

The allegations of product defect centered around the trigger and safety. Apparently some Model 700 rifles can be "tricked" into accidental discharge by a certain sequence of trigger and safety manipulations. Appellant sought to bolster his case by putting on evidence of what he claimed was a similar defect in the Model 600, a model which Remington in fact recalled. The trial judge declined the invitation to expand the scope of the trial, reasoning that he was "not going to open the 600 bowl of worms for anybody."

The case went to the jury on standard theories of defective design, defective manufacture, failure to warn, and gross negligence. *See* Annot., *Products Liability: Firearms, Ammunition, and Chemical Weapons,* 15 A.L.R. 4th 909 (1982). The jury found no liability on any of these theories. Nor did they find appellant contributorily negligent. Appellant's first point of error complains about the inclusion of two instructions on "sole cause" in the charge.

The charge contained the following statements:

There may be more than one cause of an occurrence, but there can only be one sole cause. If an act or omission of any person not a party to the suit was the sole cause of the occurrence, then no act, omission, or product of any party to the suit could have been a cause of the occurrence.

\* \* \* \* \* \*

There may be more than one proximate cause of an event, but there can only be one sole proximate cause. If an act or omission of any person was the sole proximate cause of an occurrence, then no act or omission of any other person could have been a proximate cause.

Appellant argues strenuously that to give these instructions in a products liability case is to comment on the weight of the evidence. He challenges the instructions as being in direct violation of the Supreme Court's holding in *First Int'l Bank in San Antonio v. Roper,* 686 S.W.2d 602 (1985). Remington responds that appellant failed to preserve error, that at least the instruction on sole *proximate* cause favored appellant, and that giving the instructions was either harmless error or not error at all.

Remington's waiver contention is that appellant merely objected to the instructions as being a comment on the weight of the evidence, so he may not now complain of their *placement* in the charge or of their *combined* effect. *See* TEX.R. CIV.P. 274 (requiring objections to be distinctly articulated). This contention verges on asking litigants to make full appellate arguments during preparation of the charge. Such a requirement would run afoul of rule 274's policy of minimizing verbose, prolix objections. In addition, appellant's objection conformed to accepted practice. *See Wilson v. Kaufman & Broad Home Systems,* 728 S.W.2d 874, 875 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). Appellant properly objected to the instructions as commenting on the weight of the evidence. He was not required to go spontaneously into the details of precisely how and why they did so. Error has been preserved.

Remington also argues that the mention of sole proximate cause benefitted appellant because the only negligence and proximate cause issues asked about *appellant's* conduct, not Remington's. The thrust of this claim is that allusion to the negligence of a nonparty could only decrease the likelihood that the jury would find contributory negligence. This novel claim may have some merit. Nevertheless it does not answer the question of whether the other sole cause instruction was improperly given.

Resolution of that question requires a close analysis of *Roper*, within the context of the entire corpus of Supreme Court decisions on jury charges in products liability suits.

In *Roper*, a three year old girl injured her hand in a lawnmower's blades. The case was tried on theories of design defect and failure to warn. The manufacturer alleged in defense that parental negligence was the sole cause of the accident. The trial court submitted an instruction on that defensive theory:

> There may be more than one cause of an occurrence, but there can be only one sole cause. If an act or omission of any person not a party to the suit was the sole cause of the occurrence, then no act, omission, or product of any party to the suit could have been a cause of the occurrence.

The jury found for the manufacturer, and the trial court rendered a take nothing judgment. The court of appeals affirmed.

The Supreme Court reversed, holding the instruction to be a comment on the weight of the evidence. 686 S.W.2d 602. The opinion first pointed out that *Roper* went to trial before the Court's decision in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984):

> We note initially that this case was tried in February 1983, a year before our decision in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984). Thus, the comparative causation analysis which we announced in *Duncan* does not apply to this case. Because this is a pre–*Duncan* suit, contributory or third party negligence can only be a defense when it rises

to the level of misuse or assumption of the risk. Otherwise, the defendant must negate an element of the plaintiff's case. 686 S.W.2d at 603. Writing for a unanimous Court, Justice Kilgarlin then spelled out the error that the trial court had committed:

> The questions in a pre–*Duncan* products liability case are: was there a defect; did the defect cause damage; and what are the damages. In this case the issue was whether the lawnmower was defective and whether that defect caused Mariann's injuries. The sole cause instruction, however, singled out the acts of the parents and highlighted the question of the parents' negligence.

*Id.* at 605.

The holding in *Roper* came as no departure from the Court's consistent pronouncements against cluttering the charge with surplus instructions and foggy statements of law. For example, in *Fleishman v. Guadiano*, 651 S.W.2d 730 (Tex.1983), the plaintiff alleged that a ladder had been defectively designed. Plaintiff requested that an instruction accompany the issue of defective design, to the effect that the jury should *not* consider any contributory negligence by the plaintiff. The Court ruled that the request was properly refused, because it "would have deflected the jury's attention to plaintiff Guadiano's contributory negligence, when it was considering whether the ladder was defectively designed." 651 S.W.2d at 731.

This principle was reaffirmed in *Acord v. General Motors Corp.*, 669 S.W.2d 111 (Tex.1984). There the Court considered the propriety of instructing the jury in a products case that a manufacturer is not an insurer of his product. That the instruction correctly stated the law was common ground, but the question was whether such an instruction violated the rule against excess baggage in a products liability charge. *See Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979). Writing for a unanimous Court, Justice Kilgarlin opined that there should never have been any doubt:

> If *Turner* was not sufficiently specific to advise the bench and bar that in strict

liability cases the jury is not to be instructed with balancing factors, surely we have laid this matter to rest by our opinion in *Fleishman v. Guadiano*, 651 S.W.2d 730 (Tex.1983), where we again endorsed the submission as approved by *Turner* and upheld the trial court's refusal to give any other instructions. The jury need not and should not be burdened with surplus instructions.

669 S.W.2d at 115–16. (The "balancing factors" referred to by the Court had to do with the problem in *Turner*. Up until *Turner*, it was uncertain how or whether the fact-finder should weigh different considerations in deciding whether a design defect was unreasonably dangerous). *See also Magro v. Ragsdale Brothers, Inc.*, 721 S.W.2d 832, 836 (Tex.1986) ("Any additional instructions serve merely to distract the jury's attention from the essential issues of the case."); *Woods v. Crane Carrier Co., Inc.*, 693 S.W.2d 377, 380 (Tex.1985) (sole cause instruction harmless because it preceded an unanswered issue).

The crucial inquiry, then, is whether a particular instruction is excess baggage, or is properly loaded into the charge.

■ As discussed earlier, the instructions on sole cause were certainly correct statements of law. In addition, it is well settled that each party is entitled to an affirmative submission of all of his theories which have support in the evidence. *Texas Employers Ins. Ass'n v. Patterson*, 144 Tex. 573, 192 S.W.2d 255 (1944); *see* 3 R. MCDONALD, TEXAS CIVIL PRACTICE §§ 12.10.1, 12.10.2. The defendant has no less right than the plaintiff to have the jury properly instructed on his theories. *Sales Affiliates, Inc. v. McKisson*, 408 S.W.2d 124, 127 (Tex.Civ.App.—Amarillo 1966), *rev'd on other grounds*, 416 S.W.2d 787 (Tex.1967); *Texas Employers Ins. Ass'n v. Swaim*, 278 S.W.2d 600, 604 (Tex.Civ.App.

—Amarillo 1954, writ ref'd n.r.e.); *Ranne v. Jackson*, 125 S.W.2d 407, 408 (Tex.Civ. App.—San Antonio 1939, no writ); *see* TEX.R.CIV.P. 277 (relegating inferential rebuttals to the instructions).

■ In this case the evidence did support the instruction on sole cause. Remington implicated the conduct of a third party as being the sole cause of the accident. Indeed it is difficult to imagine a stronger case for giving an instruction on sole cause. *See Charter Oak Fire Ins. Co. v. Taylor*, 658 S.W.2d 227, 229 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Erickson v. Deayala*, 627 S.W.2d 475, 478–79 (Tex.App.—Corpus Christi 1981, no writ); *see also Herrera v. FMC Corp.*, 672 S.W.2d 5 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). *Cf. Huerta v. Hotel Dieu Hospital*, 636 S.W.2d 208 (Tex.App.—El Paso 1982) (improper to give sole cause instruction regarding defendant's employee where defendant was sued on theories of respondeat superior and negligent hiring), *rev'd on other grounds*, 639 S.W.2d 462 (Tex.1982) (per curiam holding, expressly agreeing that such instruction was improper). Remington's theory about Dornak's conduct painted a classic picture of sole cause.[1]

Appellant nevertheless insists that *Roper* operates to deprive a products liability defendant of his inferential rebuttal defense of sole cause, no matter what the evidence raises. This is incorrect for several reasons. First, rule 277 indicates that the trial court *shall* give proper instructions on inferential rebuttal defenses. Second, the holding of *Roper* was repeatedly grounded by Justice Kilgarlin onto pre-*Duncan* law. Appellant attempts to get around the opinion's express limitations to pre-*Duncan* law by arguing that a retrial of *Roper* would have taken place *after* Duncan. Thus, goes the argument, it would have

---

1. Our holding also serves to implement the Supreme Court's clear directive supporting broad submission of issues. *See Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984). Inferential rebuttal defenses *must* be treated somewhere; the Supreme Court has unmistakably indicated that that somewhere is to be in the instructions, not the issues. *See, e.g., Lemos v. Montez, supra*;

Tex.R.Civ.P. 277 ("Inferential rebuttal *questions* shall not be submitted in the charge.") (emphasis added); Pope & Lowerre, *Revised Rule 277 —A Better Special Verdict System For Texas*, 27 SW.L.J. 577, 587 ("Explanatory *instructions* should now replace many of the special issues which were formerly employed....") (emphasis added).

been pointless to reverse the case. However, the Court astutely observed that retrial would take place under the newly enacted rules of evidence. 686 S.W.2d at 605. Retrial was by no means pointless.

Finally, the Court was careful not to criticize the definition of sole cause, although it had ample opportunity to do so. Quite the contrary, it recognized the definition as entirely correct.[2] Sole cause simply had little to do with a pre-*Duncan* case.

In short, although the *holding* of *Roper* has expired of its own terms, its *policy* remains fully operative and binding. We have demonstrated that the charge in this case comports with that policy. The first point of error is overruled.[3]

■ The second through fifth points of error challenge the court's action in limiting the scope of the trial. Specifically, the court excluded evidence relating to the Model 600 as well as certain gun examination reports (GER's) about the Model 600 and the Model 700. Appellant sought to introduce such evidence for two purposes:

(1) to show that the Model 700 was defective, and

(2) to show Remington's corporate state of mind.

The court purported to admit twenty-two of the thirty-four GER's "for the limited purpose of notice because it bears upon you all can't bury your heads in the sand about the customers' complaints. That is as far as it goes, and I won't let it go the jury."

The trial court's rulings fell within the zone of discretion allowed by Texas law. Assuming, without deciding, that all of the proffered evidence could properly have been admitted, we find the exclusion proper under TEX.R.EVID. 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Here every consideration listed in the rule was present. The trial of this case lasted for weeks; the statement of facts is several thousand pages long; there were hundreds of exhibits. Witness after witness testified about the Model 700 and about Remington's refusal to recall it. If appellant had been permitted to inflate the trial with evidence about the Model 600, Remington would necessarily have had to respond with cross-examination and additional rebuttal proof. Rule 403 was designed for precisely this sort of case, because "[a] great deal of evidence is excluded on the ground that the costs outweigh the benefits." MCCORMICK ON EVIDENCE § 185, at 544 (Cleary 3d ed. 1984); *see* Annot., *Products Liability: Admissibility of Evidence of Other Accidents to Prove Hazardous Nature of Product*, 42 A.L.R. 3d 780, 796–97 (1972); *see also* TEX.R. APP.P. 81. Points of error two through five are overruled.

■ The sixth point of error complains of the trial court's exclusion of certain rebuttal evidence. Appellant sought to introduce the deposition testimony of a Remington employee. That deposition was taken in connection with a federal court suit against Remington, also concerning the in-

---

2. Appellant's brief refers to the sole cause instruction as being "disapproved." *See* Appellant's Brief at 21. This is inaccurate. "Appellate courts are not authorized to 'approve' a court's charge. They are empowered only to pass on points which present specific objections, properly preserved, to an actual charge under the unique facts of a particular case, and to determine whether reversible error is demonstrated by the objection raised under the record in that case." *State v. Jamail,* 416 S.W.2d 473, 475 (Tex.Civ.App.—Waco 1967, no writ); *accord State v. Tidwell,* 435 S.W.2d 619, 620–21 (Tex. Civ.App.—Waco 1969, no writ).

3. *Roper* may have been limited to cases which were "closely contested." 686 S.W.2d at 605. Because this case is not a pre-*Duncan* case, it is unnecessary to decide whether it was "closely contested." *See Acord v. General Motors Corp.,* 669 S.W.2d 111, 116 (Tex.1984) ("evidence sharply conflicting" and case "closely contested").

For a similar gloss involving TEX.R.CIV.P. 233, *see Lopez v. Foremost Paving, Inc.,* 709 S.W.2d 643, 645 (trial "hotly contested") (Tex.1986); *Garcia v. Central Power & Light Co.,* 704 S.W.2d 734, 737 (Tex.1986) (same); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 921 (Tex.1979) (evidence "sharply conflicting").

advertent firing of a Model 700. *See Muzyka v. Remington Arms Co., Inc.*, 774 F.2d 1309 (5th Cir.1985). Appellant desired to use the deposition excerpt to contradict the live testimony of a Remington expert.

The parties have made elaborate arguments about whether the evidence was admissible, based on their respective readings of TEX.R.EVID. 801 and TEX.R.CIV.P. 207. Much of the confusion stems from the difficulty of hanging Texas procedure onto the skeleton of the federal rules of evidence, and from the frequent amendments to the rules. The Texas Supreme Court allowed for the use of deposition evidence via TEX.R.EVID. 801(e)(3), whereas the federal rules relegated such proof to the section which presupposes unavailability of the witness.

In addition, TEX.R.EVID. 801(e)(2)(D) defines out of hearsay certain statements by the employee of a party-opponent. Appellant relies on this rule as an alternate ground for admission of the evidence.

It is possible to avoid this procedural tangle by simply assuming that the evidence was flatly admissible, i.e. just as if the declarant were on the stand. Yet the trial court has long had discretion to limit the scope of the rebuttal portion of the case. *See Gulf C. & S.F. Ry. Co. v. Holliday*, 65 Tex. 512, 519 (1886) ("largely within the discretion of the trial judge"). That TEX.R.CIV.P. 265 dictates how proceedings should be ordered is in no way a grant of carte blanche to introduce unlimited rebuttal evidence. *See Buzzard v. MAPCO, Inc.*, 499 S.W.2d 352, 356 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.); *Russ Mitchell, Inc. v. Houston Pipe Line Co.*, 219 S.W.2d 109, 114 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.); *Burnett v. Amicable Life Ins. Co.*, 195 S.W.2d 237, 240 (Tex.Civ.App.—Eastland 1946, writ ref'd n.r.e.); *see also* TEX.R.EVID. 403; TEX.R. APP.P. 81. The sixth point of error is overruled.

The judgment is affirmed.